**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NICHOLAS G.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 17 C 8607** |
| ) | |
| **ANDREW SAUL, Commissioner of** ) | **Magistrate Judge Jeffrey Cummings** |
| **Social Security,**[1] ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Nicholas G. ("Claimant") brings a motion for summary judgment to reverse the

final decision of the Commissioner of Social Security that denied Claimant's claim for Disability

Insurance Benefits.  The Commissioner brings a cross-motion for summary judgment seeking to

uphold his decision to deny benefits.  The parties have consented to the jurisdiction of the United

States Magistrate Judge pursuant to 28 U.S.C. §636(c).  For the reasons stated below, Claimant's

motion for summary judgment to reverse the final decision of the Commissioner [Dckt. #13] is

denied, and the Commissioner's motion for summary judgment [Dckt. #20] is granted.

## I.  BACKGROUND

### A.  Procedural History

On March 12, 2012, Claimant (then 53-years old) filed a Title II Disability Insurance

Benefits ("DIBs") application alleging a disability onset date of December 22, 2011.  (R. 12, 43.)

---

[1] Andrew Saul is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).  In addition, Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion.  Therefore, only plaintiff's first name and the first initial of his last name shall be listed in this opinion.

His claim was denied initially, upon reconsideration, and following a hearing held by Administrative Law Judge ("ALJ") Roxanne Kelsey. (R. 9-20.) Claimant requested review by the Appeals Council. (R. 7-8.) On June 24, 2014, the Appeals Council denied his request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1-3); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed a complaint in the District Court. (R. 380.) Then Magistrate Judge Rowland issued a decision reversing the ALJ's decision on June 10, 2016. (R. 384-98.) On remand, ALJ Kelsey held another hearing and again denied Claimant's application on January 30, 2017. (R. 317-29.) Claimant's request for review by the Appeals Council was denied on September 29, 2017. (R. 303.) Claimant subsequently filed a complaint in this Court.

**B. Medical Evidence In The Administrative Record**

The administrative record contains the following medical evidence that bears on Claimant's claim for DIBs:

**1. Evidence from Treating Sources**

Claimant presented to Tamika Hobson, PA-C, at Personal Physicians on December 28, 2011 complaining of nervousness and insomnia. (R. 201.) PA Hobson attributed this to his recent unemployment and denial of disability. (*Id.*) On February 2, 2012, Claimant saw Dr. Jain Shishir at Personal Physicians for his asthma. (R. 203.) Claimant had been seeing Dr. Shishir quarterly for treatment for his asthma since 2009. (R. 174-217, 233-251.) Claimant was prescribed Singulair and an Advair Diskus inhaler. (R. 203.) At an October 2010 appointment, the asthma was noted to not limit his activities. (R. 192.) In January 2011, Dr. Shishir documented that the asthma symptoms were rare. (R. 194.) In September 2011, dyspnea and wheezing were reported to be monthly or less and coughing was weekly or less. (R. 199.) At the

February 2012 appointment, Dr. Shishir noted that the symptoms were well controlled with medicine and assessed the chronic asthma as mildly persistent and stable on his current medication dosage. (R. 203.) Claimant's lungs were clear to auscultation and percussion. (*Id.*)

On June 25, 2012, Claimant was seen as an outpatient by Dr. Rafiq Muhammad. (R. 292-95.) Claimant's chief complaints were that he needed a primary care physician, that he had lower back problems, was stressed, had no job, and slept poorly. (R. 292.) Claimant's diagnoses upon discharge were hypertension ("HTN"), asthma (unspecified), low back pain, gastroesophageal reflux disease ("GERD"), and allergic rhinitis. (R. 294.) His lungs were reported to be clear to auscultation, and his asthma was documented as stable. (R. 293-94.) Claimant was again seen by Dr. Muhammad for a routine visit on September 14, 2012. (R. 282-90.) While the medical records from that outpatient visit reference a June 2012 exam of the lumbar spine that found mild scoliosis of the lumbar spine with concavity toward Claimant's right side and small, thin spurs noted at L5 and L2, Claimant's lower back pain was documented to be mildly improved. (R. 289.) Claimant's lungs were again reported to be clear to auscultation and asthma was stable. (R. 287, 289.)

Dr. Muhammad completed a medical questionnaire on February 8, 2013. (R. 297-98.) He reported treating Claimant since April 18, 2012. (R. 297.) Dr. Muhammad noted Claimant's HTN, asthma, allergic rhinitis, GERD, and low back pain (which was identified as moderate in severity). (*Id.*) Dr. Muhammad further stated that Claimant had difficulty bending and lifting heavy objects and would not be capable of performing a full-time job. (R. 297-98.)

Dr. Muhammad saw Claimant for routine outpatient follow-up visits on February 14, 2014, July 14, 2014, October 20, 2014, May 22, 2015, October 23, 2015 (R. 637-78.) During those visits, Dr. Muhammad consistently documented that Claimant's lungs were clear to

auscultation, that there were no neurologic focal deficits, and that his asthma was stable. (*Id.*) Claimant's treatment plan was maintained throughout the course of the visits. (*Id.*) However, in April of 2015, Claimant presented to the emergency room at Advocate Christ Hospital complaining of shortness of breath that had been present for ten weeks. (R. 553, 572.) Claimant was treated with a nebulizer and given steroids and an inhaler on discharge. (R. 561, 573, 584.)

Dr. Muhammad completed another medical questionnaire on September 26, 2016, this time stating that he had been treating Claimant since May 16, 2014. (R. 550-51.) Dr. Muhammad opined that Claimant had the following diagnoses: low back pain (moderate severity), neck pain (moderate severity), asthma, and hypertension. (R. 550.) The lower back pain was said to radiate to the left lower extremities, but there was no radiation of the neck pain. (*Id.*) Dr. Muhammad further documented that Claimant's functional limitations due to his medical conditions were that he had difficulty bending, twisting, lifting, and pulling heavy objects as well as difficulty moving his neck from side-to-side. (*Id.*) Dr. Muhammad noted that Claimant had not worked since December 2011. (R. 551.)

### 2. Evidence from Agency Consultants

Dr. Charles Kenny completed a physical residual functional capacity assessment on May 14, 2012. (R. 253-60.) Asthma was identified as the primary diagnosis, with chronic fatigue listed as another alleged impairment. (R. 253.) Dr. Kenny opined that Claimant should avoid concentrated exposure to extreme heat, extreme cold, humidity, and pulmonary irritants to prevent the exacerbation of asthma. (R. 257.) According to Dr. Kenny, Claimant's statements regarding his limitations were consistent with the objective medical findings and credible. (R. 258.) Dr. Gotway affirmed Dr. Kenny's findings on August 10, 2012, noting that "[t]he

additional records received at the reconsideration level did not indicate any worsening of the [C]laimant['s] conditions and no new conditions or complaints." (R. 261-63.)

On October 30, 2012, Dr. Patrice Solomon completed a Psychiatric Review based on Claimant's anxiety disorder. (R. 267-77.) Dr. Solomon opined that Claimant had a medically determinable impairment that did not satisfy the diagnostic criteria of an anxiety disorder. (R. 271.) With respect to Claimant's functional limitations, Dr. Solomon documented that Claimant had no limitations in activities of daily living, and mild limitations in maintaining social functioning and maintaining concentration, persistence, and pace. (R. 275.) There was insufficient evidence of any repeated episodes of decompensation. (*Id.*)

### C. Evidence from Claimant's Testimony

During a hearing on November 8, 2016, Claimant testified that he has not worked since December 22, 2011 because of his numerous problems, specifically noting his arthritis in his neck and back and lethargy as a result of his asthma. (R. 342.) He reported that he did not have problems seeking medical treatment, but that he has had problems falling after being treated, specifically noting a time that he fell after coughing and trying to open a door. (*Id.*) Claimant testified that his doctor told him it was a result of his asthma. (*Id.*)

Claimant then discussed his December 2015 hospitalization, stating that he went because his lungs felt full and he could not breathe. (R. 343.) He was put on a nebulizer breathing machine, given two doses of medication, and eventually discharged with a new medication. (R. 343-44.) When asked if he has had problems since then, Claimant responded that he always has problems, but not so severe as to warrant going to the hospital. (*Id.*) Claimant uses a nebulizer about three times a week when he feels very suffocated in his chest. (*Id.*) His doctor has advised him to continue taking his medications and that there is nothing else to be done. (R. 344-45.)

Claimant reported being unable to help with chores except possibly "light" tasks.  (R. 345.)  He explained that chores like mopping are heavy and make him "tired in [his] chest."  (*Id.*)  Claimant then testified that he can stand for about an hour, walk very slowly for four blocks, lift 18-20 pounds, and cannot sit or lay down for a long time because of the pain in his back.  (R. 346.)

Upon questioning by his attorney, Claimant explained that he has pain in his neck and lower back and gets headaches when he coughs a lot.  (R. 347.)  He stated that it hurts to bend at his waist, and he has to sit on the floor in the shower in order to wash his feet.  (*Id*.)  His doctor told him to continue with his medications and do arm and bending exercises.  (*Id*.)  Fumes or odors affect Claimants asthma and cause problems breathing.  (R. 347-48.)

Claimant further testified that he continues to have problems with anxiety.  (R. 348.)  He explained that three-to-four nights a week he wakes up coughing and cannot fall back to sleep for a couple of hours.  (R. 348-49.)  On those days, Claimant needs to take a nap in order to feel better.  (R. 349.)  Claimant testified that his doctor never told him to nap nor has he ever asked his doctor about his need to nap.  (*Id*.)

### D.  Evidence from Vocational Expert's Testimony

At the hearing, Vocational Expert Paprocki ("VE") was provided with Claimant's work history from the initial hearing.  (R. 349.)  Specifically, Claimant's past work was described as a material handler, heavy, semiskilled.  (*Id.*)  The ALJ then asked the VE to consider an individual matching the Claimant's vocational profile who is closely approaching advanced age; Spanish speaking; has a ninth grade education in Mexico; who can perform medium work; may frequently climb, stoop, or crawl; may have no more than occasional concentrated exposure to extreme cold, extreme heat, or humidity; and may have no more than occasional exposure to

concentrated levels of fumes, odors, dust, gases or poor ventilation.  (R. 352.)  The VE testified that such an individual would be precluded from Claimant's past work.  (*Id.*)

The VE then testified that such an individual could work in a hospital as a room cleaner, which is a medium exertion job (41,700 jobs nationally); dining room attendant (58,000 jobs nationally); or as an industrial cleaner (12,600 jobs nationally).  (R. 352-53.)  The ALJ then asked whether an individual who required an additional break of one or two hours could perform those jobs.  (R. 353.)  The VE testified that such an individual would not be competitively employable at all because an individual can potentially only miss up to 10% of the workday. (*Id.*)

Claimant's attorney then asked the VE whether the room cleaner job that was identified would require the hypothetical individual to come into contact with odors and cleaning chemicals.  (R. 354.)  The VE explained that such a position would not entail more than occasional exposure.  (*Id.*)  When asked if the individual would be unable to perform the job of a room cleaner or industrial cleaner if he was limited to no exposure to dust and fumes, the VE agreed that such an individual would be unable to work in those positions.  (R. 355.)  Upon further questioning by the ALJ, the VE explained that a limitation of no exposure to dust, fumes, or gases would restrict virtually all jobs.  (*Id.*)

## II.  LEGAL ANALYSIS

### A.  Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).

Consequently, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983).

This Court must consider the entire administrative record, but it will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Court will focus on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to his/her conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.' " *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

**B.  The Standard For Proof Of Disability Under The Social Security Act**

In order to qualify for DIBs, a claimant must be "disabled" under the Act.  A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §423(d)(1)(A).  In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy."  *Dixon,* 270 F.3d at 1176.  Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).  "The RFC is the maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).  The claimant has the burden of establishing a disability at steps one through four.  *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001).  If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy."  *Id*. at 886.

**C.  The ALJ's Decision**

The ALJ applied this five-step analysis.  At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since December 22, 2011, the alleged onset date.  (R. 319.)  At step two, the ALJ found Claimant suffered from the following severe impairments: degenerative disc disease, including bone spurs, of the lumbar spine, and asthma.  (*Id.*)  At step

three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 321.)  At step four, the ALJ determined that Claimant had the RFC to perform medium work except he would have the ability to perform frequent climbing, stooping, and crawling; no more than occasional concentrated exposure to extreme cold, heat, or humidity; and no more than occasional exposure to concentrated levels of fumes, odors, dust, gases or poor ventilation.  (R. 324.)   The ALJ found that Claimant was unable to perform any past relevant work.  (R. 328.)

Lastly, at step five, the ALJ found that given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers that Claimant could perform, such as hospital cleaner, dining room attendant, or industrial cleaner.  (R. 328-29.)  Therefore, the ALJ found that Claimant had not been under a disability from December 22, 2011 through the date of the decision, January 30, 2017.  (R. 329.)

### D.  The Parties' Arguments In Support Of Their Respective Motions For Summary Judgment

In his motion, Claimant argues that the ALJ erred in her assessment of Claimant's RFC and Claimant's statements regarding the intensity, persistence, and limiting effects of his pain and symptoms.  In particular, Claimant states that the ALJ erred by relying on the state agency medical consultants' medical opinions, specifically because Claimant's back pain was not documented until one month after the initial consultant's review.  Claimant also maintains that the ALJ improperly rejected Claimant's alleged limitations in lifting.  Further, Claimant contends that the ALJ should have taken into consideration his functional restrictions that were produced by his anxiety.  With respect to the ALJ's assessment of the intensity, persistence, and limiting

effects of Claimant's pain and symptoms, Claimant asserts that the ALJ erred in finding that his subjective allegations were not entirely consistent with the evidence.

In his motion for summary judgment, the Commissioner contends that the ALJ properly considered Claimant's mild bone spurs, mild scoliosis, and non-severe anxiety in her RFC analysis. Additionally, the Commissioner argues that the ALJ sufficiently articulated how the evidence supported her assessment of Claimant's subjective symptoms.

### 1. The ALJ's RFC Assessment Was Properly Supported.

In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009.) The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. *Dixon*, 270 F.3d at 1178. The ALJ must give consideration to the opinions of medical sources in evaluating whether a claimant is disabled; however, the final responsibility for deciding a claimant's RFC limitations is reserved for the ALJ. *See* 20 C.F.R. §404.1527(d); *Diaz v. Charter*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "[T]he determination of a claimant's RFC is a matter for the ALJ alone, not a treating or examining doctor, to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014).

The RFC determination should include a discussion describing how the evidence, both objective and subjective, supports the ultimate conclusion. Social Security Ruling ("SSR") 16–3p; *Conrad v. Barnhart,* 434 F.3d 987, 991 (7th Cir. 2006); *Briscoe v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005); *Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001). When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010). An ALJ is not allowed to "play doctor" by using her own lay opinions to fill

evidentiary gaps in the record.  *See Blakes v. Barnhart,* 331 F.3d 565, 570 (7th Cir.2003); *Suide,* 371 Fed.Appx. at 690.

### a. The ALJ properly assessed the evidence concerning Claimant's degenerative disc disease.

It is Claimant's position that the ALJ erred by finding that Claimant had the medically determinable severe impairment of degenerative disc disease but that the impairment did not produce any work-related functional limitations.  Claimant contends that the ALJ improperly relied on the opinions of the state agency consultants, who had an incomplete review of the records.  Specifically, Claimant points to the fact that Dr. Kenny completed a physical RFC analysis in May of 2012, while Claimant's lumbar scoliosis was not documented until June of 2012.  (R. 289.)  According to Claimant, the ALJ failed to logically explain how she reached her conclusion regarding Claimant's ability to perform work tasks considering his degenerative disc disease.

However, the ALJ did explain how she assessed Claimant's degenerative disc disease and its impact on his ability to perform work-related tasks.  In particular, at step three, the ALJ identified the criteria for finding an individual disabled under Social Security impairment listing 1.04 (disorders of the spine), noting that the medical evidence must show that the impairment caused a compression of a nerve root along with certain additional evidence.  (R. 321.)  Upon reviewing the evidence, the ALJ made a determination that the severity of the degenerative disease did not meet or equal the listing criteria.  She based her opinion on the following facts: (1) no medical imaging studies showed compromise of a nerve root or spinal cord; (2) there was no documentation of Claimant reporting radiation of pain from the lower back into the lower extremities; and (3) Dr. Muhammad did not document decreased lumbar range of motion, muscle weakness, or muscle atrophy with associated muscle weakness accompanied by sensory or reflex

loss. (R. 323.) The ALJ went on to consider this same evidence regarding Claimant's degenerative disc disease in her RFC assessment.

In addition, in both the listing analysis and RFC assessment, the ALJ referenced the June 2012 radiograph of the lumbar spine that documented mild scoliosis, and mild, thin and small bone spurs, but no acute fracture, compression deformity or fractures. (R. 322, 326.) The ALJ also noted that Claimant reported a mild improvement in his back pain in September 2012 and that no treating physician imposed any exertional limitations or referred him to a specialist or physical therapy for the back pain, or to a neurosurgeon for the lumbar spine. (*Id.*) *See Dixon*, 270 F.3d at 1178 (The ALJ "also noted that Dr. Voss never referred Dixon to a diabetes specialist."); *Griffith v. Callahan*, 138 F.3d 1150, 1155 (7th Cir. 1998) (absence of treating physician referral to a mental health specialist for treatment supported finding that mental impairments not disabling). Furthermore, the ALJ remarked that although Dr. Muhammad did not document any examination of Claimant's spine, the neurologic examinations found no focal deficits. (R. 322-23.)

Claimant seemingly ignores the ALJ's discussion and review of Claimant's medical records and instead focuses on the 2012 radiograph submitted after the agency consultant's assessment. Claimant then infers that had the consultant reviewed the radiograph, the consultant would have opined that Claimant could perform work at no more than a light exertional level and would have directed the ALJ to find that Claimant was disabled as of the alleged disability onset date. Claimant's argument, however, is merely speculative and ignores the well-settled principle that "the determination of a claimant's RFC is a matter for the ALJ alone-not a treating or examining doctor-to decide." *See Thomas*, 745 F.3d at 808.

Moreover, contrary to Claimant's assertion, the June 2012 radiograph is not "new and potentially decisive" evidence that the ALJ was required to re-submit to medical scrutiny.  *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.") (internal quotation omitted).  Again, the radiograph showed mild findings and coincided with minimal findings on examination and minimal treatment recommendations. Claimant himself reported mild improvement in his lower back pain just a few months later.  On this record, the Court finds that the June 2012 radiograph – while new – was not potentially decisive and would not reasonably have changed the agency consultant's opinion.  *See Keys v. Berryhill*, 679 Fed.Appx. 477, 480-81 (7th Cir. 2017) (finding no error in the ALJ's reliance on agency consultants' opinions where new MRIs showed "mild" changes and Claimant provided no "evidence that the reports would have changed the doctors' opinions."); *Bond v. Berryhill*, No. 16 C 2018, 2017 WL 1398656, at *3 (N.D.Ill. Apr. 18, 2017) ("In this case, [Claimant] has provided no evidence that her October 2014 CT scan – which revealed only 'mild degenerative changes' – would have changed the opinions of [the agency consultants].").  As such, the record was complete and contained sufficient evidence for the ALJ to make her determination.  *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) ("[H]ow much evidence to gather is a subject on which we generally respect the [Commissioner's] reasoned judgment."); *see also Kendrick v. Shalala*, 998 F.2d 455, 456–57 (7th Cir. 1993) ("[O]ne may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.").

In sum: while the agency consultant may have rendered an opinion before one non-decisive medical record relating to the degenerative disc disease was known, the ALJ did not base her analysis solely on the consultant's opinion. Instead, she properly focused on the medical records to determine whether Claimant required additional treatment/restrictions based on his degenerative disc disease. *See* SSR 16–3p*; Conrad,* 434 F.3d at 991; *Briscoe,* 425 F.3d at 352; *Myers,* 238 F.3d at 621. Accordingly, the ALJ's discussion of the meager evidence to support Claimant's arguments regarding back pain provided a sufficient citation to medical evidence of mild or nonexistent findings when assessing what limitations should be imposed. *See McKinzey*, 641 F.3d at 890 (The ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."); *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008) (it is enough if the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of disability").

### b. The ALJ properly rejected Claimant's testimony regarding his alleged weight lifting limitations.

Claimant, who testified that he was unable to lift anything over 18-20 pounds, argues that the ALJ failed to properly consider his lifting limitations. According to Claimant, the ALJ did not explain why the degenerative disc disease could not have caused the lifting restrictions. Claimant's argument is misguided. Claimant has the burden of proving his limitations,[2] and he failed to do so. The ALJ found that Claimant did not meet his burden of proof because there was no objective evidence that any exertional limitations were imposed upon Claimant by one of his

---

[2] *See* 20 C.F.R. §404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Zurawski*, 245 F.3d at 885–86.

treating physicians. (R. 326.) This lack of medical evidence concerning a lifting restriction led the ALJ to find that the "limits appear to be self-imposed rather than medically necessary." (*Id.*) Consequently, the ALJ - - who acknowledged that lifting could impose stress on the spine - - did not err with respect to her finding that there was insufficient "evidence of an impairment or impairments that would require this degree of limitation" for Claimant. (R. 326.) Furthermore, as the foregoing discussion illustrates, the ALJ sufficiently explained her reasoning for not imposing lifting restrictions in her RFC determination.

### c. The ALJ properly evaluated the evidence pertaining to Claimant's anxiety disorder.

Claimant asserts that the ALJ erred in failing to include any work-related functional restrictions that stemmed from his anxiety disorder in her RFC analysis. Under SSR 96-8p, the ALJ must consider all of the claimant's impairments - - including those impairments that are not severe - - in determining the claimant's RFC. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Simon-Leveque v. Berryhill,* 229 F.Supp.3d 778, 787 (N.D.Ill. 2017); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); 20 C.F.R. §§404.1520(e), 404.1545; SSR 96-8p.

Claimant does not challenge the ALJ's decision to give great weight to the opinion of Dr. Solomon (the state agency's reviewing psychologist), who found that Claimant's anxiety disorder was not a severe impairment. Instead, Claimant argues that the admittedly non-severe impairments caused by his anxiety created functional restrictions that should have been addressed by the ALJ. In support of his argument, Claimant cites to his complaints about anxiety attacks after awaking in the middle of the night from a coughing fit and the need to nap as a result of being awake for a few hours in the middle of the night. According to Claimant, this occurs three-to-four times a week. (R. 348-49.)

Although reversal is required when the ALJ does not fully consider the impact of the non-severe impairments, *see Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010), the ALJ did fully discuss and consider Claimant's anxiety disorder. (R. 325.) In particular, the ALJ discussed Claimant's testimony regarding his need to nap, but she found that the medical records did not support Claimant's statements. (R. 325-26.) Notably, the ALJ observed that Claimant's medical records do not establish that Claimant mentioned his need to take naps to his doctor when he sought medical treatment for his anxiety disorder, or that there was any discussion of treatment to help with Claimant's sleep problems or the need to nap. (*Id.*) Based on the record before the ALJ, she found that there was no indication that the naps were medically necessary. (R. 325-26.) For these reasons, the ALJ decided not to include them as a limiting factor. (*Id.*); *see Orienti v. Astrue,* 958 F.Supp.2d 961, 982 (N.D.Ill. 2013) (noting that "[i]n cases where a claimant did not seek treatment for an alleged impairment, such evidence was a basis to find insufficient the claim of an impairment") (citing to *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir. 2005)); *Schaaf v. Astrue,* 602 F.3d 869, 876 (7th Cir. 2010).

Such a determination was within the ALJ's discretion so long as she properly considered the relevant factors. *See* 20 C.F.R. §404.1527(d); *Diaz*, 55 F.3d at 306 & n.2. The ALJ's determination was proper because she considered Claimant's testimony regarding his anxiety, gave great weight to Dr. Solomon's opinion that it was not severe, and accordingly decided not to impose any additional limitations in her RFC analysis. *See* 20 C.F.R. §§404.1520(e), 404.1522(a), 404.1545; SSR 96-8p; *Castile*, 617 F.3d at 927-28; *Denton*, 596 F.3d at 423-24. Moreover, there is no indication the ALJ failed to consider any specific evidence relating to this issue. For all of these reasons, the Court finds that the ALJ's RFC analysis was supported by substantial evidence.

## 2. The ALJ Did Not Err In Assessing Claimant's Statements Regarding The Intensity, Persistence, And Limiting Effects Of His Pain And Symptoms.

Claimant next takes issue with the ALJ's assessment of his reported subjective symptoms. The ALJ must sufficiently explain her evaluation of a claimant's subjective symptoms "by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The ALJ's discussion must allow a reviewing court "to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey*, 641 F.3d at 890. The Court will only overturn the ALJ's subjective symptom assessment if it is "patently wrong," that is, lacking "any explanation or support." *Elder*, 529 F.3d at 413.

SSR 16-3p provides additional guidance to the ALJ for assessing Claimant's symptoms.[3] SSR 16-3p calls for a two-step process whereby the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 4790249, *49463. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id*. at 49464. In making this evaluation, the ALJ should consider the entire case record, along with the (1) claimant's daily activities; (2) location, duration, frequency, and intensity of pain or

---

[3] Because the ALJ issued her ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. *See* SSR 16-3p, 82 FR 49462-03, 2017 WL 4790249, n.27. SSR 16-3p shifted the focus from a claimant's credibility to clarify that "subjective symptom evaluation is not an examination of the individual's character." *Id*. at 49463; *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (noting that ALJs are not "in the business of impeaching claimants' character"). SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another," and a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *Shered v. Berryhill*, No. 16 CV 50382, 2018 WL 1993393, at *5 (N.D.Ill. Apr. 27, 2018).

symptoms; (3) precipitation and aggravating factors; (4) type, dosage and side effects of medication; (5) treatment other than medication; and (6) any other factors concerning the claimant's functional limitations and restrictions. *Id.* at 49465-66; 20 CFR § 404.1529(c)(3).

The ALJ followed this two-step process here, first determining that Claimant's impairments could reasonably be expected to cause Claimant's alleged symptoms. (R. 325.) But, at step two, the ALJ found that "[C]laimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)[4] The reasons the ALJ proceeded to provide allow this Court to conclude that the ALJ reached her decision in a rational manner, supported by the evidence of record. *McKinzey*, 641 F.3d at 890.

According to the ALJ, Claimant reported symptoms that were inconsistent with the symptoms documented in the objective record. (R. 325.) Aside from a hospital visit for asthma exacerbation, the ALJ did not find evidence that Claimant told any care provider that he experienced heaviness in his chest or the feeling of suffocation. (*Id.*) Additionally, the ALJ explained that although Claimant testified about coughing fits as a result of his asthma that caused headaches and woke him in the middle of the night, no such coughing was reported to a physician. (*Id.*) The ALJ did acknowledge that Dr. Muhammad's records were not the most

---

[4] Claimant criticizes the ALJ's use of the phrase "not entirely credible" as being "meaningless boilerplate." (Dkt. 13, at 10) (citing to *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010)). Although the Seventh Circuit has held that boilerplate language is inadequate "by itself" to support the ALJ's assessment of a claimant's subjective symptoms, the court has repeatedly upheld credibility findings where the ALJs have used such boilerplate language if the ALJs engaged an appropriate analysis of the record. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."); *Castile v. Astrue*, 617 F.3d 923, 929-30 (7th Cir. 2010); *Richison v. Astrue*, 462 Fed.Appx. 622, 625-26 (7th Cir. 2012). As in *Filus*, the ALJ's use of boilerplate language was harmless because - - as explained below - - the ALJ engaged in an appropriate analysis of the record. *See also Orienti,* 958 F.Supp.2d at 976 (criticizing claimant's "boilerplate" argument where, as here, "the ALJ provide[d] adequate reasoning beyond the repetition of the phrase").

thorough, but she found that there was nothing to indicate that Dr. Muhammad would have ignored documenting any changes in Claimant's health. (R. 325) (referencing Dr. Muhammad's documentation of an ophthalmologic examination during the course of his treatment). Based on the ALJ's assessment of the records, she opined that there was "no reason to consider that the physician would not have documented the [C]laimant's report of heaviness in his chest or of difficulty breathing despite treatment, if the [C]laimant had reported such symptoms." (*Id.*) This was a reasonable conclusion considering the frequency and severity of the coughing fits to which Claimant testified. *See Schaaf,* 602 F.3d at 876 (holding that "the ALJ was entitled to infer that [claimant] would have told his doctors if he was experiencing excruciating pain"); *Sienkiewicz,* 409 F.3d at 804; *Orienti,* 958 F.Supp.2d at 977, 982.[5]

Additionally, the ALJ did not rely solely on a lack of confirmatory objective evidence to reject Claimant's subjective allegations. Instead, the ALJ considered Claimant's statements along with the medical evidence, finding inconsistencies with the medical evidence as well as a lack of confirmatory records. *See Elder*, 529 F.3d at 413-14 (upholding the ALJ's decision to disregard the claimant's testimony because it contradicted Claimant's previous reports to her doctor of regular exercise); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) ("discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration."); *see also Pierce*, 739 F.3d at 1050 (finding that a "lack of objective support from physical examinations and test results" remained relevant to the ALJ's

---

[5] Claimant's reliance on *Pierce v. Colvin,* 739 F.3d 1046 (7th Cir. 2014), is misplaced. In *Pierce,* the claimant consistently complained to her treating physicians regarding back pain and was prescribed pain medication. *Id.,* at 1048-49. Nonetheless, the ALJ found that claimant's testimony about her pain was not credible because it conflicted with several doctors' objective assessments. *Id.,* at 1049. The Seventh Circuit held that "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Id.,* at 1049-50. In this case, unlike in *Pierce,* Claimant did not complain to his medical treaters about the subjective symptoms cited above and this is the reason that the ALJ discounted his testimony about the symptoms.

assessment); *Murphy v. Berryhill*, 727 Fed.Appx. 202, 206-07 (7th Cir. 2018) ("But the ALJ's adverse credibility finding was not based on the absence of details in her medical records; rather, it was properly based on the incongruity between the relatively modest symptoms Murphy reported to her doctors and the more severe symptoms Murphy and her husband reported to the ALJ.")

Specifically, the ALJ noted Dr. Muhammad's consistent documentation of Claimant's asthma as "stable" both before and after his April 2015 hospital visit. (R. 326.) Based on the primary care provider's consistent assessment of the asthma and the fact that the treatment went unchanged over the course of the years, the ALJ logically made the determination that the problem was controlled, which was within her prerogative. (R. 326); *See Reed v. Colvin,* 656 Fed.Appx. 781, 787-88 (7th Cir. 2016) (affirming the ALJ's assessment of the claimant's statements about her subjective symptoms, which the ALJ found to be "not entirely consistent" with the medical evidence).

Furthermore, contrary to Claimant's assertions, the ALJ was entitled to consider Dr. Muhammad's lack of referrals for Claimant's lumbar spine pain, which according to Claimant caused problems with his ability to sit, stand, or lay down. *See Dixon*, 270 F.3d at 1178; *Griffith*, 138 F.3d at 1155. The ALJ noted that Claimant told Dr. Muhammad about lower back pain and that the physician saw the radiograph showing mild bone spurs. (R. 326.) Because Dr. Muhammad had this information and decided not to refer Claimant to additional therapy or treatment for the problem, the ALJ found Claimant's own testimony about the intensity of the pain inconsistent. The ALJ further found that no evidence of exertional limits had been discussed or imposed by a treating physician. (R. 326.) The Seventh Circuit has stated that the "regulations expressly permit the ALJ to consider a claimant's treatment history," and the ALJ's

assessment of that history is entitled to deference.  *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); *Shideler*, 688 F.3d at 311 (upholding assessment of the claimant's subjective statements that, in part, relied upon the claimant's treatment history); *see also Walker v. Bowen*, 834 F.2d 635, 644 (7th Cir. 1987) (where claimant sought only routine care for six-month period, it was suggestive of no serious medical difficulties during that period).  Therefore, the ALJ appropriately considered Claimant's lack of specific treatment or imposition of exertional limitations for his lumbar spine pain when assessing the intensity, persistence, and limiting effects of Claimant's pain and symptoms.

### 3. Claimant's Two Additional Arguments Are Without Merit.

First, Claimant takes the position that the ALJ did not sufficiently identify with specificity the inconsistent testimony; however, "an ALJ's credibility findings need not specify which statements were not credible."  *Shideler*, 688 F.3d at 312; *see also Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2003) (same); *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997) (ALJ not required to address each point raised through testimony where ALJ found testimony not credible).  Furthermore, as discussed above, the ALJ did address what testimony was not supported by additional medical evidence and why that factored into her decision.

Finally, Claimant argues that the ALJ erred when she failed to explain how Claimant could perform certain work tasks when he was unable to perform certain activities of daily living that reflected his pace and performance limitations.  The ALJ did, however, discuss Claimant's testimony regarding his daily activities, acknowledging that he could do "light things" at home. (R. 320-21, 325.)  Thus, there is no indication that the ALJ equated Claimant's activities of daily living with the ability to perform full-time work.  *See Schmidt v. Astrue,* 496 F.3d 833, 844-46 (7th Cir. 2007) (ALJ considered the claimant's performance of daily activities as a single factor

when discounting claimant's statements).  For all of these reasons, the Court finds that Claimant

has failed to show that the ALJ's subjective symptom assessment was patently wrong.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the final decision of the

Commissioner [Dckt. #13] is denied and the Commissioner's Motion for Summary Judgment

[Dckt. #20] is granted.  The decision of the ALJ is affirmed.  It is so ordered.


 **ENTERED:**

_____
**Jeffrey Cummings**
**United States Magistrate Judge**


**Dated: August 28, 2019**